*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT LANKTON,

        Plaintiff-Appellant,

v

ORCHID ORTHOPEDIC SOLUTIONS, LLC,

        Defendant-Appellee.

UNPUBLISHED
June 17, 2026
11:13 AM

No. 375510
Ingham Circuit Court
LC No. 24-000422-CD

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

SWARTZLE, J. (*dissenting*).

I respectfully dissent. As an initial point, I reiterate my concerns with using the *McDonnell Douglas*[1] burden-shifting framework in retaliation and discrimination cases like this one. See *Johnson v City of Detroit*, unpublished per curiam opinion of the Court of Appeals, issued August 5, 2025 (Docket No. 367098) (SWARTZLE, J., concurring). What started out as a mere evidentiary tool has "metastasized" into a "legal frankenstein," *id.* at 2, bearing little resemblance to the actual language of the Worker's Disability Compensation Act, MCL 418.101 *et seq.*[2]

Be that as it may, even under the *McDonnell Douglas* framework, I would affirm summary disposition in favor of defendant. As I read the record, plaintiff has not identified one or more "similarly situated" employees for purposes of establishing either the causation component of the

---

[1] *McDonnell Douglas Corp v Green*, 411 US 792, 802-805; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

[2] MCL 418.301(13) states: "A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act."

prima-facie standard or pretext for unlawful retaliation, both of which are his burdens to show under the burden-shifting framework.[3]

The purpose of a similarly situated group is to "provide a consistent benchmark to gauge whether [plaintiff was] singled out." *Bender v Hecht's Dep't Stores*, 455 F3d 612, 621 (CA 6, 2006). In this case, a similarly situated employee would be one who (1) was on final-warning status for a "Good Documentation Practices" (GDP) infraction, (2) committed another GDP infraction, but (3) was not terminated. *This* would be the relevant set of employees against which plaintiff's termination should be compared under the indirect-evidence approach, as witnesses for defendant made it clear that plaintiff's final-warning status was a key circumstance for his termination. See *Hecht*, 499 Mich at 608 (explaining that a similarly situated employee "must be 'nearly identical' to the plaintiff in all relevant aspects"); *Kilpatrick v Lansing Community College*, 348 Mich App 44, 58; 17 NW3d 689 (2023) ("To compare these three employees with plaintiff would be like comparing metaphorical apples with a metaphorical orange—simply put, they were not similarly situated."). But plaintiff has not pointed to any evidence of such employees in the record. Whether different employees not on final-warning status were terminated for different infractions seem beside the point.

To the extent that plaintiff could not identify such a similarly situated employee because that person does not exist, then that fact would critically cut against both causation and pretext. But instead of holding the lack of a similarly situated employee against plaintiff, the majority faults *defendant* for not coming forward with its own similarly situated employee evidence. Maj op at 11 (pointing out that "there was no evidence that defendant had terminated another worker's employment for general errors"). This flips *McDonnel Douglas* on its head. See, e.g., *Texas Dept of Community Affairs v Burdine*, 450 US 248, 258-259; 101 S Ct 1089; 67 L Ed 2d 207 (1981) (explaining that it is "plaintiff's task to demonstrate that similarly situated employees were not treated equally").

Relatedly, with regard to the number of infractions, given plaintiff's final-warning status, it seems a distinction without a difference whether he was actually terminated based on one, two, or four such infractions.

As a final distinction without a difference, I do not see the relevance of whether the Forging Operations Manager told the Human Resources Manager about the infractions immediately or waited a few days. There is nothing in the record to suggest that the Forging Operations Manager was a final decisionmaker regarding plaintiff's employment status. Instead, it was the Human Resources Manager, together with the Director of Operations, who were the sole decisionmakers. Thus, it is their knowledge and motivation that matter for purposes of unlawful retaliation, not that of the Forging Operations Manager.

---

[3] The majority is correct in observing from *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 607-608; 886 NW2d 135 (2016), "[T]here remain multiple ways of proving the ultimate question of discrimination in a circumstantial evidence case" besides similarly situated employee evidence. But *this* plaintiff has specifically relied on similarly situated employee evidence to make his circumstantial case, see Appellant's Br, p 19 (arguing that defendant has not "cite[d] to any other employee fired for a clerical error"), so it seems a relevant point to consider on appeal.

The record confirms that the Human Resources Manager knew (1) by October 10 that plaintiff would need surgery and (2) by October 18 that he would have his surgery on October 30. Notably, the Human Resources Manager did not take any steps to terminate or punish plaintiff when she first found out about the surgery. It was only three weeks later—when she learned that plaintiff had committed two (or four, as the case may be) GDP infractions—that she decided, in consultation with the Director of Operations, that plaintiff had to be terminated, given his final-warning status and recent infractions. In other words, the Human Resources Manager only decided to "escalate the matter" after she found out about the multiple infractions. How causation or pretext could be inferred from this timing escapes me.

At the end of the day, all plaintiff really has in terms of evidence is temporal proximity: He alerted the Human Resources Manager that he would need shoulder surgery, and three weeks later he was terminated. In the face of this, defendant has provided a legitimate business reason for its decision to terminate plaintiff: He was subject to termination seven months earlier; instead of termination, he was put on final-warning status; the Human Resources Manager learned that plaintiff needed time off for surgery and took no adverse action; and only after learning of plaintiff's *multiple* GDP infractions did the Human Resources Manager act to terminate plaintiff. Given that plaintiff was subject to termination several months before, but defendant decided to give him a final chance, whether plaintiff violated this section or that section of the GDP seems a rather thin reed on which to hold a trial, when there is no genuine issue of material fact that he violated the GDP multiple times while on final-warning status.

For these reasons, I would affirm the trial court's grant of summary disposition in defendant's favor, and thus I respectfully dissent.

/s/ Brock A. Swartzle